IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TERESA WYLDS, | )  CASE NO.  3:21-CV-00365-JGC |
| | ) |
| Plaintiff, | ) |
| | ) |
| | )  JUDGE JAMES G. CARR |
| vs. | )  UNITED STATES DISTRICT JUDGE |
| | ) |
| COMMISSIONER OF SOCIAL | )  MAGISTRATE JUDGE |
| SECURITY, | )  JONATHAN D. GREENBERG |
| | ) |
| Defendant. | )  **REPORT & RECOMMENDATION** |
| | ) |

Plaintiff, Teresa Wylds ("Plaintiff" or "Wylds"), challenges the final decision of Defendant, Kilolo Kijakazi,[1] Acting Commissioner of Social Security ("Commissioner"), denying her applications for Medicare Qualified Government Employment Benefits and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be VACATED AND REMANDED for further consideration consistent with this opinion.

## I.  PROCEDURAL HISTORY

In June 2018, Wylds filed applications for MQGE and SSI, alleging a disability onset date of June 8, 2018 and claiming she was disabled due to back problems, severe depression, PTSD, severe anxiety,

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security.

1

and atrial fibrillation.  (Transcript ("Tr.") 15, 85, 99, 115, 131.)  The applications were denied initially and upon reconsideration, and Wylds requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 15.)

On September 26, 2019, an ALJ held a hearing, during which Wylds, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id.*)  On December 31, 2019, the ALJ issued a written decision finding Wylds was not disabled.  (*Id.* at 15-31.)  The ALJ's decision became final on December 16, 2020, when the Appeals Council declined further review.  (*Id.* at 1-6.)

On February 15, 2021, Wylds filed her Complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 13, 15, 17.)  Wylds asserts the following assignments of error:

(1)    The ALJ failed to properly account for the opinions provided by the reviewing state agency psychologist despite finding those opinions to be persuasive.

(2)    The ALJ's decision should be reversed and remanded because the ALJ did not have the authority to hear and ultimately make a decision in this case.

(Doc. No. 13 at 2.)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Wylds was born in April 1972 and was 47 years-old at the time of her administrative hearing (Tr. 15, 29), making her a "younger" person under Social Security regulations.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  She has at least a high school education and is able to communicate in English.  (Tr. 29.)  She has past relevant work as a receptionist, data entry clerk, and director of elections.  (*Id.*)

2

B.    **Medical Evidence[2]**

Wylds saw primary care physician Mathew Jose, M.D., for her physical and mental impairments. (Tr. 408-23.) Wylds' diagnoses included chronic anxiety and depression, for which she was prescribed Zoloft and Xanax.  (*Id.* at 412, 414-23.)

On August 29, 2018, Wylds saw Brian Griffiths, Pys.D., for a psychological consultative examination.  (*Id.* at 637-43.)  Wylds reported her chief complaints consisted of back pain, anxiety, and depression.  (*Id.* at 638.)  Wylds told Dr. Griffiths she struggled with her anxiety at night, which worsened her depression during the day, and she did not sleep well.  (*Id.* at 639.)  Wylds reported struggling with depression, crying, withdrawing from others, and finding no pleasure in the activities she once enjoyed.  (*Id.* at 640.)  Wylds further reported poor sleep, decreased appetite, and a low energy level.  (*Id.*)  She was easily fatigued, and her attention and concentration decreased with her pain.  (*Id.*) Wylds reported anxiety, daily panic attacks, and PTSD symptoms, including intrusive thoughts, flashbacks, nightmares, avoidant behaviors, exaggerated startle reflex, and hypervigilance.  (*Id.*)

Wylds described her daily routine as waking up between 9:30 and 10:00 a.m., laying on a heating pad, watching TV, and napping.  (*Id.*)  She went to bed at 6:30 p.m.  (*Id.*)  She had no friends because she secluded herself.  (*Id.*)  She did not do any chores around the house because of pain.  (*Id.*)  She could fix a simple meal.  (*Id.*)  She did not grocery shop because it involved too much walking.  (*Id.*)

On examination, Dr. Griffiths found normal speech, average intelligence, depressed mood, a sad, tired, and tearful affect, and no outward signs of anxiety, anger, or hostility.  (*Id.* at 641.)  Dr. Griffiths further found adequate recall, an inability to complete serial sevens, an ability to count backwards from twenty by threes with no errors, the ability to calculate 24 divided by three and one quarter of 200, and

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.  As Wylds challenges only the ALJ's mental findings, the Court further limits its discussion of the evidence to Wylds' mental impairments.

the ability to remember two of three objects after a five-minute delay.  (*Id.*)  Dr. Griffiths diagnosed Wylds with major depressive disorder, recurrent episode, moderate, post-traumatic stress disorder, and panic disorder.  (*Id.* at 642.)  Dr. Griffiths opined Wylds' anxiety, depression, and/or PTSD symptoms may interfere with her ability to keep up with others.  (*Id.* at 643.)  Dr. Griffiths further opined that, based on Wylds' comments, stressful situations exacerbated Wylds' PTSD symptoms and magnified her depression.  (*Id.*)

## C.    State Agency Reports

On September 5, 2018, Juliette Savitscus, Ph.D., reviewed the record and found Wylds had moderate limitations in her abilities to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself.  (*Id.* at 90-91, 104-05.)  Dr. Savitscus determined Wylds could perform simple, routine tasks that required little or no judgment and skills that could be learned in more than 30 days as stated in the DOT (SVP 2) in environments with no high production quotas as needed on an assembly line.  (*Id.* at 94, 108-09.)  Dr. Savitscus further opined Wylds could have occasional interaction with the public, coworkers, and supervisors.  (*Id.* at 94, 109.)  Dr. Savitscus explained that these findings were an adoption of the prior residual functional capacity from the September 21, 2017 decision.  (*Id.*)

On December 11, 2018, on reconsideration, Vicki Warren, Ph.D., reviewed the record and affirmed the moderate limitations in the four areas of the paragraph B criteria.  (*Id.* at 120, 136.)  Dr. Warren opined Wylds could sustain simple tasks without fast pace (*i.e.*, without the consistent fast pace required in assembly line work).  (*Id.* at 125, 141.)  Dr. Warren further opined Wylds' mood and anxiety would occasionally interfere with her interpersonal interactions.  (*Id.*)  As a result, Wylds could interact "briefly and occasionally in situations that do not require more than superficial contact with coworkers, supervisors, and the general public."  (*Id.*)  Dr. Warren further opined Wylds could adapt to settings where

her duties were relatively static, and changes were infrequent and could be adjusted to over time.  (*Id.*)

Dr. Warren again noted Wylds could interact with others superficially and infrequently.  (*Id.* at 126, 142.)

## D.     Hearing Testimony

During the September 26, 2019 hearing, Wylds testified to the following:

- She lives in a home with her son.  (*Id.* at 43.)  Her son pays the bills.  (*Id.*)  She can sometimes make change at the store.  (*Id.* at 44.)  Sometimes she gets confused.  (*Id.*)  She is unable to operate a bank account because she gets confused, makes mathematic mistakes, and overdraws the account.  (*Id.* at 44-45.)  She has a driver's license, but her son usually drives her because she gets confused.  (*Id.* at 45.)

- She stopped working because she was having trouble sitting with her back pain, and she got confused often and it was hard for her to concentrate.  (*Id.* at 45-46.)

- She sees her family doctor for her anxiety and depression.  (*Id.* at 50.)  She went to counseling for a while and she takes medication for her mental health issues.  (*Id.*)  She secludes herself a lot and she is not able to be around people.  (*Id.* at 52.)  She cannot handle loud noises and she does not do well with chaos.  (*Id.*)  She has bad nightmares that interfere with her sleep, which may contribute to her confusion.  (*Id.*)

- When she worked as a receptionist at Coleman, she was behind a glass and she just had to check a box on a form that they were there for an appointment.  (*Id.* at 54.)  She worked with a nurse she was comfortable with and her boss was her counselor, so she had her counselor with her at all times.  (*Id.* at 55.)

- She spends a lot of her time in bed.  (*Id.* at 56.)  She spends six out of seven days a week in bed most of the day.  (*Id.* at 58.)  She has anxiety attacks every day.  (*Id.* at 57.)  Anything social triggers her anxiety.  (*Id.* at 58.)

The VE testified Wylds had past work as an administrative support worker, data entry clerk, and elections director.  (*Id.* at 60.)  The ALJ then posed the following hypothetical question:

> [P]lease assume a hypothetical individual claimant's age, education level, vocational background able to do light work except she can occasionally climb ramps and stairs.  Never climb ladders or scaffolds and occasionally balance, stoop, kneel, crouch, but never crawl.  She can never work around hazards, such as unprotected heights or moving dangerous mechanical parts.  She is limited to no foot controls.  She can occasionally operate a motor vehicle.  She can occasionally work in conditions of humidity and wetness and conditions of extreme heat or cold.  In conditions where there is exposure to concentrated dust, odors, fumes, and other pulmonary irritants [INAUDIBLE] present.  She is also limited to performing simple, routine and repetitive tasks, but not a production rate pace.  For example, no assembly line work.  She is limited to simple work

5

related decisions. She is limited to responding appropriately to occasional interaction with supervisors, coworkers, and the general public. She is limited to tolerating few changes in the work setting defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently and be adequately and easily explained. She is limited to a sit/stand option at the workstation each hour to change position for two minutes while remaining on task 95 percent of the workday. She is limited to use of a cane to ambulate to the workstation. Can the hypothetical individual perform any of the past work as actually performed or generally performed in the national economy?

(*Id.* at 61-62.)

The VE testified the hypothetical individual would not be able to perform Wylds' past work as an administrative support worker, data entry clerk, and elections director. (*Id.* at 62.) The VE further testified the hypothetical individual would be able to perform other representative jobs in the economy, such as route aide, folder, and inspector within the electronics field. (*Id.*) In response to a statement from the ALJ that the social limitations, among others, stated in the RFC were not in the DOT, and whether that portion of the VE's testimony was based on the VE's knowledge and experience, the VE testified in the affirmative. (*Id.* at 62.) In response to a question from the ALJ about the impact of changing the hypothetical to reflect no contact with the public and no tandem work, the VE testified it would not change any of the jobs or testimony. (*Id.* at 63.) In response to a question from the ALJ about a limitation to working in isolation away from all others, the VE testified such a limitation was work preclusive. (*Id.* at 64.)

Counsel for Wylds asked the VE whether there was any tolerance at the unskilled level of an employee who was either unwilling or unable to accept instructions and respond appropriately to criticism from supervisors. (*Id.* at 65.) The VE testified there would be no tolerance at the unskilled level for such an employee. (*Id.*)

### III.    STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or

---

[3] Wylds' Title II claim consists of her claim for Medicare Qualified Government Employment benefits. To qualify under the relevant provision, Wylds must show that she qualifies for disability insurance benefits. *Padlo v. Berryhill*, No. 2:15-cv-1953 AC, 2017 WL 735734, at *3 n.4 (E.D. Cal. Feb. 24, 2017) (citing 42 U.S.C. § 426(b)(2)(A)(i)).

7

combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Wylds was insured on her alleged disability onset date, June 8, 2018, and remained insured through June 30, 2019, her date last insured ("DLI"). (Tr. 15-16.) Therefore, in order to be entitled to Title II benefits, Wylds must establish a continuous twelve-month period of disability commencing between these dates. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.

2. The claimant has not engaged in substantial gainful activity since June 8, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical spine with lumbar spondylolisthesis and cervical spondylosis; obstructive sleep apnea; post-laminectomy syndrome; obesity; and mental health impairments variously diagnosed as depression, anxiety, and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can occasionally climb ramps and stairs, never climb ladders ropes or scaffolds, and can occasionally balance, stoop, kneel, crouch, but never crawl.  She can never work around hazards, such as unprotected heights or moving dangerous mechanical parts.  She is limited to no foot controls.  She can occasionally operate a motor vehicle.  She can occasionally work in conditions of humidity and wetness, in conditions of extreme heat or cold, in conditions where there is exposure to concentrated dust, odors, fumes, and other pulmonary irritants, or where vibrations are present.  She is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line work.  She is limited to making simple work-related decisions.  She is limited to responding appropriately to occasional interaction with supervisors, coworkers, and is to have no contact with the general public.  She is limited to no tandem work.  She is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting.  Any necessary changes need to occur infrequently, and be adequately and easily explained.  She is limited to a sit stand option at the workstation each hour to change position for two minutes while remaining on tasks 95% of the workday.  She is limited to use of a cane to ambulate to the workstation.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on April **, 1972 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from June 8, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-30.)

## V.  STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

Wylds argues the ALJ erred when she found the opinion of state agency psychologist Dr. Warren persuasive but failed to include Dr. Warren's limitation that Wylds only had the ability to interact with supervisors on a superficial basis or explain why she was excluding this limitation opined by Dr. Warren. (Doc. No. 13 at 8.)   The Commissioner responds that even if Wylds is correct, the ALJ's error was harmless as the jobs the ALJ relied on at Step Five had people ratings of eight, "which represents 'the

11

lowest possible level of human interaction that exists in the labor force.'"  (Doc. No. 15 at 3) (quoting *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016)).

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all the relevant evidence, 20 C.F.R. §§ 404.1546(c), 416.946(c), and must consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996).

The ALJ is obligated to consider the record as a whole.  *Hurst v. Secy'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985).  "In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")).  "'[W]here the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC.'"  *Davidson v. Comm'r of Soc. Sec.*, No. 3:16CV2794, 2018 WL 1453472, at *2 (N.D. Ohio Mar. 23, 2018) (quoting *Moscorelli v. Colvin*, No. 1:15-cv-1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016)) (citing SSR 96-8p, 1996 WL 374184, at *7); *Cooper v. Comm'r of Soc. Sec.*, No. 2:18-cv-67, 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018) ("[W]here, as here, the ALJ assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so.") (citations omitted), *report and recommendation adopted by* 2019 WL 95496 (S.D. Ohio Jan. 3, 2019).  *See also* SSR 96–8p at *7, 1996 WL 374184 (SSA July 2, 1996) ("The RFC assessment must

always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). While the RFC is for the ALJ to determine, it is well established that the claimant bears the burden of establishing the impairments that determine his RFC. *See Her*, 203 F.3d at 391.

An ALJ must provide a discussion at each step "in a manner that permits meaningful review of the decision." *Boose v. Comm'r of Soc. Sec.*, No. 3:16cv2368, 2017 WL 3405700, at *7 (N.D. Ohio June 30, 2017) (quoting *Snyder v. Comm'r of Soc. Sec.*, No. 5:13cv2360, 2014 WL 6687227, at *10 (N.D. Ohio Nov. 26, 2014). This discussion must "build an accurate and logical bridge between the evidence" and the ALJ's conclusion. *Snyder*, 2014 WL 6687227, at *10 (quoting *Woodall v. Colvin*, No. 5:12 CV 1818, 2013 WL 4710516, at *10 (N.D. Ohio Aug. 29, 2013)).

The ALJ found as follows with respect to the state agency reviewing psychologists' opinions: "The mental assessments of Juliette Savitscus, Ph.D., the State Agency's psychological consultant at B2A, and Vicki Warren, Ph.D., the State Agency's psychological consultant at B6A, are persuasive to the extent that they did not adopt the prior ALJ's determination. This is consistent with the new evidence at B6F, which confirms a diagnosis of major depressive disorder." (Tr. 28.)

The ALJ is required to explain why the limitation to superficial interaction with supervisors was not adopted as the RFC conflicted with it. SSR 96–8p at *7. Further, the ALJ must always build an "accurate and logical bridge" from the evidence to her conclusions. Here, the ALJ failed to include the need for superficial contact with supervisors in the RFC or explain why she did not incorporate that limitation into the RFC. (Tr. at 22-29.) This "failure is all the more glaring" given that the ALJ found Dr. Warren's opinion persuasive and consistent with the new evidence in the record. (*Id.* at 28.) Therefore, the Court finds the ALJ erred.

13

In support of her argument that the ALJ's error is harmless, the Commissioner relies on *Lane*, an unpublished opinion from the Tenth Circuit. First, the Court notes that its sister court in the Southern District of Ohio recently rejected this same argument:

> Relying on authority outside this Circuit, the Commissioner contends that any error in the RFC assessment was harmless because it had no effect on the ALJ's step five finding. Specifically, the Commissioner argues that the three positions cited by the ALJ – sorter, inspector, and assembler – " 'each have a people rating of 8,[5] which requires the least amount of functioning with respect to people.' " (ECF No. 19 at 5 (quoting *Finley v. Colvin*, No. 14-430, 2015 WL 5162476, at *5 (M.S. La. Aug. 12, 2015)), *report and recommendation adopted*, 2015 WL 5162396 (M.S. La. Sept. 1, 2015)). According to the Commissioner, other courts have found a rating of 8 to be consistent with superficial contact. *See, e.g.*, *Connor v. Colvin*, No. 1:13-cv-00219, 2014 WL 3533466, at *4 (D. Me. July 16, 2014); *Ren v. Astrue*, No. 08-01242, 2009 WL 3497785, at *9 (D. Colo. Oct. 29, 2009); and *Danell C.-J. v. Saul*, No. 18-1194, 2019 WL 4277150, at *8 (D. Md. Sept. 10, 2019) (ECF No. 19 at 6.) The Undersigned finds this authority neither binding nor persuasive in light of the above discussion recognizing a distinction between the quality and quantity of interactions as described by the terms superficial or occasional.
>
> In sum, the ALJ found the the State agency psychologists' prior administrative findings persuasive but failed to include a limitation for "superficial interactions" or offer an adequate explanation for declining to do so. The ALJ's cursory discussion "deprived this court of a 'logical bridge between the evidence on the record and his conclusion[.]'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). As a result, the ALJ's decision does not allow for an adequate review by this Court. For these reasons, it is **RECOMMENDED** that Plaintiff's first contention of error be **SUSTAINED**.

*Slone v. Commissioner*, Case No. 2:20-cv-4850, 2021 WL 4901498, at *5 (S.D. Ohio Oct. 21, 2021), *report and recommendation adopted by* 2021 WL 5323115 (S.D. Ohio Nov. 16, 2021).[4]

The Commissioner argues that the Southern District of Ohio rejected this argument "seemingly on the ground that the DOT's people ratings only describe the quantity of interpersonal interactions, as opposed to the quality of those interactions." (Doc. No. 15 at 4 n.2). However, the Commissioner asserts "that is simply incorrect – the people rating numbers 'do not reflect the frequency of contact with people, but only the 'type' of contact.'" (*Id.*) (citation omitted). In addition, the Commissioner asserts that *Slone*

---

[4] The Court notes the Commissioner did not cite *Lane* to the Southern District of Ohio.

"ignored the DOT's additional statement that the positions required a 'not significant' amount of interpersonal interaction" and failed to explain "how a job could possibly be described as having something more than superficial interaction requirements when it demands nothing more than a trivial amount of instruction following." (*Id.*) The Court notes that the Commissioner failed to raise these arguments to the district court in *Slone*, as no objections to the report and recommendation were filed. *Slone v. Commissioner*, 2021 WL 5323115, at *1.

Second, this Court finds *Lane* distinguishable, as the limitation at issue in *Lane* was that the claimant "could accept supervision and interact with co-workers 'as long as contact is not frequent or prolonged.'" 643 F. App'x at 768. Here, the limitation is that Wylds could "interact briefly and occasionally in situations to do not require more than superficial contact with coworkers, supervisors, and the general public." (Tr. 125.) The superficial interaction is an additional limitation to the interaction needing to be occasional and brief. And as this Court has previously made clear, occasional interaction (a quantitative limitation) does not account for a limitation to superficial interaction (a qualitative limitation). *See Walsh v. Colvin*, No. 3:15CV1708, 2016 WL 1752854, at *14 (N.D. Ohio May 3, 2016) ("Plaintiff argues, however, and the Court agrees, that the limitation to superficial interactions does not adequately address the state agency psychologists' specific limitation to 'work that does not involve frequent social interactions.'").

Third, a district court in the Tenth Circuit rejected such an argument two years after *Lane* in a case where the ALJ restricted a claimant to occasional and superficial interaction with coworkers but did not address limitations in interaction with supervisors:

> Nor was the ALJ's error harmless. (Doc. 19 at 13.) The Commissioner points out that the three jobs on which the ALJ relied at step five require the lowest level of interaction with supervisors of the jobs included in the *Dictionary of Occupational Titles.*[42] (*Id.*) However, as previously noted, the "ability to interact with supervisors is a work-related mental ability that is critical to all work," including unskilled work requiring a comparatively low level of interaction with

15

supervisors. *Bennett*, 2017 WL 5612154 at *7. Further, at the August 2014 hearing in this matter, the VE testified that Mr. Sherman would be unable to do certain unskilled jobs requiring a comparatively low level of interaction with supervisors if he was moderately restricted, *inter alia*, in his ability to interact with supervisors.[43] (AR 63-64.) Thus, had the ALJ properly considered the uncontroverted medical source opinions in the record regarding Mr. Sherman's impaired ability to interact with supervisors and accounted for this limitation in formulating his RFC, it may have reduced or eliminated the type and number of jobs she found Mr. Sherman could perform at step five. That the ALJ picked and chose through the functional limitations in the medical source opinions of record therefore requires remand. *Haga*, 482 F.3d at 1208.

*Sherman v. Berryhill*, Case No. 180439 KK, 2019 WL 2450919, at *15 (D. New Mexico June 12, 2019).

In this case, counsel for Wylds asked the VE what the tolerance was at the unskilled level for an employee who was either unable or unwilling to accept instructions and respond appropriately to criticism from supervisors. (Tr. 65.) The VE testified there would be no tolerance for such a restriction at the unskilled level. (*Id.*)

While the claimant bears the burden of proof at Steps One through Four, the burden shifts to the Commissioner at Step Five. *Johnson v. Comm'r*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r*, 378 F.3d 541, 548 (6th Cir. 2004)). As the Sixth Circuit has made clear, "The assessment of the medical evidence conducted at a hearing is particularly important at Step 5 of the evaluation of a social security disability claim because the RFC articulated by the ALJ will be used by the vocational expert to assess the claimant's ability to perform work. In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exists, 'the question[s] must accurately portray a claimant's physical and mental impairments.'" *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (quoting *Ealy*, 594 F.3d at 516).

"In these circumstances, the ALJ's failure to explain his decision deprived this court of a 'logical bridge between the evidence on the record and his conclusion," *Flesicher v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011), and left the Commissioner, in her brief on the merits . . . , to defend the ALJ's decision with impermissible, post-hoc rationalizations, *see S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947)."

16

*Davidson*, 2018 WL 1453472, at *2.  Because the ALJ's opinion does not permit the Court to follow the "reasoning and treatment of" opinion evidence in the record, the Commissioner's decision must be vacated and remanded for further proceedings.  *Id.* at *2 (quoting *Davis v. Comm'r of Soc. Sec.*, No. 1:16 CV 2446, 2018 WL 137779, at *10 (N.D. Ohio 2018)); *see also Cooper*, 2018 WL 6287996, at *5.

As this matter is already being remanded for error in the treatment of Dr. Warren's opinion, in the interest of judicial economy, the Court declines to reach the constitutional issue set forth in Wylds' second assignment of error.

## VII.   CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be VACATED AND REMANDED for further consideration consistent with this opinion.

Date: March 2, 2022                                    *s/ Jonathan Greenberg*
                                                       Jonathan D. Greenberg
                                                       United States Magistrate Judge

### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**